Gillman & Gillman, LLC
770 Amboy Avenue
Edison, New Jersey 08837
Phone (732) 661-1664
Attorney for Debtors
By: Justin M. Gillman, Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In re:<br><br>Luis Vicente Burgos<br><br>Debtor(s). | Chapter: 7<br><br>Case No.: 17-35354<br><br>Hearing Date: June 5, 2018<br><br>Judge: Hon. Christine M. Gravelle, USBJ |
|---|---|

**CERTIFICATION OF DEBTOR IN OPPOSITION TO MOTION FOR THE ENTRY OF AN ORDER COMPELLING LUIS VICENTE BURGOS AND ALL OTHER OCCUPANTS TO VACATE REAL ESTATE PROPERTY AND AUTHORIZING THE TRUSTEE TO CHANGE LOCKS TO ENTRANCE WAYS AND FOR OTHER RELATED RELIEF**

Luis Vicente Burgos, being of full age, certifies as follows:

1. I am the Debtor in the above referenced Chapter 7 Bankruptcy case and I make this Certification from personal knowledge in response to the Motion filed by the Trustee relating to the Property at 53 Fredericks Place, Keansburg, New Jersey.

2. I filed the current Chapter 7 case on December 18, 2017.

3. Daniel E. Straffi is the appointed Chapter 7 Trustee ("Trustee").

4. I filed the case without an attorney. I received the assistance of a longtime family friend, Maria Martinez ("Maria"), and someone she said was her friend, Stacey Goodwin

("Stacey").   I was told that Stacey worked with an attorney.   I am not experienced in legal matters but assumed this meant that she could provide me legal services.

5.      I am the owner of the Property at 53 Fredericks Place, Keansburg, New Jersey 07734, Monmouth County ("Property").  I purchased this Property in 1993.

6.      The Property consists of a small home which is in significant disrepair due to a lack of funds and wear and tear over the years as a result of my inability to devote the time and expense.  I have not lived or stayed overnight in the Property as it is currently not fit and does not have working water service due to damaged water lines.  There is also a lack of insulation due to wear and tear and therefore the house does not maintain heat or cooling.

7.      When I filed the Bankruptcy case, I was told by Maria and Stacey that there would be no issue with the Property.

8.      I have always intended to give the Property to my son, Michael Burgos.

9.      Although I referred to Maria as my "niece", she is not actually a niece and is, in fact, the daughter of a longtime friend.

10.      Maria and Stacey prepared the Bankruptcy Petition on my behalf and told me it was a way for me to address debts which I had accrued over the years as a result of lack of income.   My only income is through Social Security and a small pension.   I live with my companion in Bergenfield, New Jersey and own nothing significant other than an older vehicle and some small old items located in my companion's home or in the Property.

11.      I retained my current attorney on May 9, 2018 and did not fully understand any of the proceedings until after he was retained.

12. At the time of the Bankruptcy filing, the Property was the subject of a mortgage of Midland Mortgage with a balance of $20,361.97 and monthly payments of $681.13. I was making my best efforts to make the payments leading up to the Bankruptcy filing. I am 79 years old and have not worked in several years due to my age.

13. As indicated by the Trustee, I obtained an appraisal of the Property indicating its value to be $45,000.00. See Trustee Motion Exhibit B.

14. At no time was I advised by either Maria or Stacey that I should hire an attorney to represent me in the Bankruptcy. I was told that Stacey worked for an attorney and she and Maria could handle the case for me.

15. I have at all times tried to cooperate to the best of my abilities with the Trustee, but do not wish to lose the Property.

16. I was first scheduled to appear for a Creditor's Meeting in January 2018. For reasons I don't fully understand, I was required to return on two separate occasions.

17. When I appeared for the Meetings, the Trustee advised me to hire an attorney. Maria and Stacey were present at both meetings and told me that I did not need a lawyer.

18. As the Trustee states, I appeared for the Meeting on March 5, 2018.

19. After the Meeting, I paid Stacey $300.00 in cash. Maria and Stacey indicated "we won the case". I assumed this meant that my Bankruptcy case was in the process of being completed.

20. Maria and Stacey then suggested that I “sell" the Property to my son, Michael. They advised Michael and I that Michael could pay off the mortgage to Midland Mortgage and

that I would sign the Deed over to Michael.  This was not intended in any way to avoid the sale of the Property in the Bankruptcy case as I thought that the Trustee had already closed the case.

21.    After the Meeting, Maria contacted Michael and told him to get a bank check to pay off the mortgage.  Michael had no involvement in my Bankruptcy case, nor was he aware of any of the issues in the case.  My son told me that he got the money for the mortgage payoff from his retirement annuity.  He never pressured me and was only doing so to allow him to take over the Property as that was my wishes.

22.    At Maria's suggestion, on March 10, 2018, I met with Michael and Maria at the Property.

23.    On March 10, 2018, Michael brought a TD Bank check made payable to Midland Mortgage in the amount of $20,728.73 which was intended to represent the mortgage payoff.  See Exhibit A.   My son provided this check to Maria to send to Midland Mortgage.

24.    Maria also brought a "Contract for Deed"  and "Quitclaim Deed" which she told me that we were to sign.  See Exhibit B.

25.    We then went to Stacey's home in Keansburg, New Jersey, and signed the papers.

26.    After I retained my current attorney, I became aware that the Contract and Deed indicate that it was prepared by an attorney in Matawan, New Jersey.   I have never met this attorney, did not pay this attorney, nor did I believe that I was being represented by this attorney in this transaction.   The attorney does not represent my son nor, to my knowledge, has he had any dealings with my son.   It was only after I reviewed the document with my current attorney that I even noticed the name on the papers.

27.     I understand that after that time, he was required to make an additional payment of less than $1,000.00 as the amount of the check was insufficient to pay off the mortgage.

28.     To my knowledge, the Deed was never recorded.

29.     In April 2018, I received a letter from Midland Mortgage confirming that the mortgage had been paid in full.  See Exhibit C.

30.     After the Creditor's Meeting, I met with the Trustee's realtor at the Property.  I led the Trustee's realtor through the Property and allowed him access to all areas and explained the conditions to the Property that required repair.

31.     I have never attempted to avoid cooperation with the Trustee in and any of these matters.  In the Trustee's Certification, he indicates that an agent for a realtor called me on May 1, 2018.  This is true.  I did not understand why he was calling me as Maria and Stacey had told me that there were no issues in the case.  I thought the realtor was interested in buying the property.  I found this odd as I thought he was supposed to be working for the Trustee.  Thus, I told him that the Property was not for sale and that I would not give him a key.

32.     Only after retaining my current attorney, did I understand the purpose of that call and repeat that I was not trying to avoid any cooperation.

33.     I do not believe the Property could sell for $70,000.00 due to its current condition. As my son thought he was in the process of buying the Property and performing repairs, he has taken the steps of obtaining estimates as to the cost of repairs which may exceed $59,000.00.

34.     I have also reviewed with my current attorney the filed Bankruptcy Petition. Although I made my best efforts to provide accurate information, I have provided my attorney

with additional information and have signed amended bankruptcy schedules which will be filed

with the Court.

35.     Neither my son, nor I intended for any of our actions to not cooperate or be

improper with the Chapter 7 Trustee.  I mistakenly and regrettably relied on advice from a family

friend and only recently understand the circumstances.   My son is willing to assist me in

resolving these maters.

36.     After I retained my current attorney, he advised me that the Trustee had been

requesting proof of insurance on the Property.   In an effort to avoid there being future issues, I

immediately obtained an insurance policy on the Property and have provided it to my attorney

who has provided it to the Trustee.

37.     I do not fault the Trustee in any of this situation.   The Trustee includes an email

from Maria.  I was not aware that she was sending the Trustee communication and I did not

authorize her to advise the Trustee that "we would be appealing" his decision to sell the Property.

I understand that the Trustee has duties in this case and that he recommended that I hire an

attorney because it was in my best interests.  I can only again say that I have dealt honestly with

the Trustee and Court and never avoided cooperation.  Though it is my fault to rely on Maria and

Stacey, I did so honestly and did not intend to do anything wrong.

38.     I ask that the Court deny the Trustee's Motion and allow me some time, with my

current attorney, to propose a resolution.  My son and companion have offered to assist me in the

future in these matters.  Though I have limited income, I am fortunate to have a wonderful family

who understand my current difficulties.   Given reasonable time, with the benefit of my current

attorney, I believe we can propose a way to resolve these problems.

38.    My attorney will be filing any appropriate amendments to my Petition to make sure all information is accurate and complete.  I do not believe that the Property is worth $70,000 and further believe that Michael should not lose the money he put toward the mortgage payoff which he made after my case was filed based on the same bad advice from Maria and Stacey.

39.    I also rely on my attorneys' submission in response to this Motion.

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.


Date:  5/24/2018                                   /s/Luis Vicente Burgos
                                                   Luis Vicente Burgos

# EXHIBIT A

OFFICIAL CHECK

**TD Bank**

53452965-3

52-0133
112

RE: MICHAEL L BURGOS [redacted]

DATE: 03/10/2018

PAY TO THE ORDER OF MIDLAND MORTGAGE

$20,728.73

Twenty Thousand Seven Hundred Twenty Eight AND 73/100

CUSTOMER COPY

DRAWER: TD BANK, N.A.
Security Features Details on Back.
NON NEGOTIABLE
MP
AUTHORIZED SIGNATURE

The Bank will not stop payment on this Official Bank Check and reimburse the purchaser or issue a replacement until the purchaser or payee signs a Declaration of Loss and more than 90 days have passed since the date of issue.

# EXHIBIT B

**CONTRACT FOR DEED**

THIS CONTRACT FOR DEED (this "Agreement") dated this 10th of March, 2018

BETWEEN:

Luis Vincente Burgos of 53 Frederick Place, Keansburg, NJ 07734

(the "Seller")

OF THE FIRST PART

AND

Michael Burgos of 130 Seaman Avenue, Beachwood, NJ 08722

(the "Purchaser")

OF THE SECOND PART

IN CONSIDERATION OF the covenants and agreements contained in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties to this Agreement agree as follows:

**SALE OF PROPERTY**

1. On the 10th of March, 2018, the Seller, for and in consideration of the sum of $20,728.73, does hereby convey and grant with warranty covenants to the Purchaser, all of the following lands and property, together with all improvements located on the property:
Being the same premises conveyed to Luis Vincente Burgos by Deed from John D. Wyckoff and Lisa A. Walsh, husband and wife dated June 28, 1993 and recorded on July 12, 1993 in the Monmouth County Clerk's Office in Deed Book 5230 at Page 0559. (the "Premises").

**PURCHASE PRICE**

2. The purchase price (the "Purchase Price") of the Premises is $20,728.73. The Purchaser agrees to pay $0.00 upon execution of this Agreement and the balance of the Purchase Price being payable in monthly installments of $0.00, due on the 1st of each month, beginning on March 10, 2018 until the Purchase Price is paid in full.

**INTEREST CHARGES**

3. Interest of 0% per year will be computed monthly and deducted from the monthly payments. The balance of the monthly payment will be applied to the principal amount of the Purchase Price outstanding.

**PROPERTY TAXES AND ASSESSMENTS**

4. For the duration of this Agreement, the Purchaser will be responsible for all taxes, and assessments levied against the Premises.

**PURCHASER'S DEFAULT**

6. In the event of the Purchaser's failure to perform any covenant or condition contained in this Agreement, the Seller will give the Purchaser a notice of default. The notice will give the Purchaser 14 days from the date the notice is received to remedy the default. If the Purchaser fails to remedy the default within 14 days, then the entire balance of the Purchase Price, including interest payable, will become due immediately after the fourteen (14) day period to remedy the default expires (the "Notice Period"). Failure to pay the full amount of the Purchase Price owing will result in the termination of this Agreement at the end of the Notice Period.

7. The Purchaser and the Seller agree that in the event that the Purchaser fails to remedy a default and this Agreement is terminated, the Purchaser will vacate the Premises within ___Ø___ days of the Agreement terminating. The Purchaser and the Seller further agree that failure of the Purchaser to vacate within that period gives the Seller a right to maintain an action to obtain vacant possession of the Premises.

8.    In the event of default and termination of this Agreement by the Purchaser, the Purchaser forfeits any and all payments made under the terms of this Agreement, including but not limited to all payments made towards the Purchase Price, and any and all taxes, assessments, or insurance premiums paid by the Purchaser, as liquidated damages for breach of this Agreement.

9.    The Seller reserves the right to recover damages resulting from the willful acts or negligence of the Purchaser.

**SELLER'S RIGHT TO REINSTATE AGREEMENT AFTER DEFAULT**

10.    In the event of the Purchaser's default and the termination of this Agreement, the Seller, at his sole discretion, will have the right to reinstate this Agreement. In exercising his discretion, the Seller may require the Purchaser to:

(i) pay all amounts due and owing under this Agreement had the Agreement not been terminated;

(ii) cure any defaults that have occurred; and

(iii) pay all expenses incurred by the Seller in enforcing their rights under this Agreement.

11.    All payments made under the preceding provision must be made in a form acceptable to both parties.

**ASSIGNMENT OR SALE OF THE PREMISES**

12.    The Purchaser may not sell, assign, transfer, convey, encumber, or otherwise deal with any interest in the Premises without the written consent of the Seller.

**DEED AND EVIDENCE OF TITLE**

13.    Upon payment of the full Purchase Price, including all taxes, assessments, interest, and other charges due to the Seller, the Seller agrees to deliver to the Purchaser, within a reasonable amount of time, a Warranty Deed to the Premises in the name of the Purchaser, free and clear of all liens and encumbrances.

**DISCLOSURE REQUIREMENTS**

14. The Purchaser and the Seller shall make all disclosures required by law.

**NOTICES**

15. All notices required to be sent under this Agreement will be sent by pre-paid registered mail to:

    If to the Purchaser:

    Michael Burgos of 130 Seaman Avenue, Beachwood, NJ 08722.

    If to the Seller:

    Luis Vincente Burgos of 53 Frederick Place, Keansburg, NJ 07734.

**CHARGES FOR LATE PAYMENT**

16. In the event the Purchaser pays a monthly installment payment after it becomes due, there will be a late fee of $___Ø___ assessed to the Purchaser as a reasonable pre-estimate of the Seller's loss as a result of the late payment. Such fees will be deducted from any payment to the Seller before being applied against the monthly installment owing.

**CONVEYANCE OR MORTGAGE BY SELLER**

17. The Seller reserves the right to encumber the Premises with a mortgage. The Seller agrees to meet the obligations due under the mortgage and to provide proof of the same to the Purchaser upon the written demand of the Purchaser.

18. The Seller reserves the right to convey their interest in the Premises, subject to this Agreement. Such conveyance will not be cause for termination of this Agreement.

**SECURITY**

19. This Agreement will act as security for the performance of all of the Purchaser's obligations under this Agreement.

**TIME OF THE ESSENCE**

20. Time is of the essence for the performance of all of the Purchaser's obligations under this Agreement.

**ATTORNEY FEES**

21. In the event of a default by the Purchaser, the Purchaser will pay all the Seller's reasonable and actual attorney fees associated with enforcing the Seller's rights under this Agreement. The default will not be deemed to be corrected until all attorney fees have been paid.

**ENTIRE AGREEMENT**

22. This Agreement will constitute the entire agreement between the Purchaser and the Seller. Any prior understanding or representation of any kind preceding the date of this Agreement will not be binding on either party except to the extent that it is incorporated into this Agreement.

**AMENDMENTS**

23. Any amendments or modifications of this Agreement or additional obligations assumed by either party in connection with this Agreement will only be binding if they are evidenced in writing and signed by each party or an authorized representative of each party.

**WAIVERS**

24. A waiver of any rights by any party in connection with this Agreement will only be binding if evidenced in writing and signed by each party or an authorized representative of each party.

**SEVERABILITY**

25. If there is a conflict between any provision of this Agreement and the applicable legislation of the State of New Jersey (the "Act"), the Act will prevail and such provisions of this Agreement will be amended or deleted as necessary in order to comply with the Act. Further, any provisions that are required by the Act are incorporated into this Agreement.

26. In the event that any of the provisions of this Agreement will be held to be invalid or unenforceable in whole or in part, those provisions, to the extent enforceable and all other provisions of this Agreement will nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Agreement and the remaining provisions had been executed by both parties subsequent to the expungement of the invalid provision.

**INTERPRETATION**

27. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

**JOINT AND SEVERAL LIABILITY**

28. All Sellers are jointly and severally liable for the acts, omissions, and liabilities of all other Sellers to this Agreement.

**HEIRS AND ASSIGNS**

29. This Agreement will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors, and assigns, as the case may be, of each party to this Agreement. All covenants are to be construed as conditions of this Agreement.

IN WITNESS WHEREOF the Seller and Purchaser have duly affixed their signatures under hand and seal on this 10th of March, 2018.

Witness: [signature] (Sign)
Skylor Perez (Print)

[signature]
Luis Vincente Burgos (Seller)

Witness: [signature] (Sign)
Anthony Reyes (Print)

[signature]
Michael Burgos (Purchaser)

**SELLER ACKNOWLEDGMENT**

STATE OF NEW JERSEY
COUNTY OF Monmouth

On the 10th of March, 2018, before me Luis V. Burgos, Notary Public in and for said county, personally appeared Luis Vincente Burgos, who has satisfactorily identified himself/herself as the signer to the above referenced document.

Stacey C Goodwin 3/10/18
Notary Public (Date)

My commission expires:

Stacey C Goodwin
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT 28, 2021

**PURCHASER ACKNOWLEDGMENT**

STATE OF NEW JERSEY
COUNTY OF Monmouth

On the 10 th of March, 2018, before me Luis V. Burgos Notary Public in and for said county, personally appeared Michael Burgos, who has satisfactorily identified himself/herself as the signer to the above referenced document.

Stacey C Goodwin 3/10/18
Notary Public (Date)

My commission expires: Stacey C Goodwin NOTARY PUBLIC STATE OF NEW JERSEY MY COMMISSION EXPIRES SEPT 28, 2021

| Drafted by: Richard A. Amdur, Jr., Esquire of<br>PO Box 409, Matawan, NJ 07747 | Return to: Richard A. Amdur, Jr., Esq. of<br>PO Box 409, Matawan, NJ 07747 |
|---|---|

©2002-2018 LawDepot.com™

RETURN TO: Richard A. Amdur, Jr., Esq.

ADDRESS: PO Box 409, Matawan, NJ 07747

THIS INSTRUMENT PREPARED BY: Richard A. Amdur, Jr., Esq.

Tax lot / Block Number or Tax Account Number: Lot 33, Block 173, Keansburg, NJ 07734

## Quitclaim Deed

This Quitclaim Deed, Executed this _______ day of _______________, ________, by Luis Vincente Burgos, not married, of 53 Fredericks Place, Keansburg, NJ 07734, (the "Grantor"), to Michael Burgos, not married, of 130 Seaman Avenue, Beachwood, NJ 08722, (the "Grantee") as the sole tenant, in the state of New Jersey.

WITNESSETH, That the Grantor, for good consideration and for the sum of $1.00, paid by the Grantee, the receipt of which is hereby acknowledged, does hereby remise and release, as well as quitclaim, unto the Grantee forever, all the right, title, interest and claim which the Grantor has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of Monmoith, State of New Jersey, to wit:

See Schedule A Attached.

Being the same property conveyed to the Grantor by the deed of Luis Vincente Burgos, dated March 10, 2018, previously referenced as follows: Book/Volume __________________, Page

---

**Grantor Acknowledgement**

STATE OF NEW JERSEY

COUNTY OF Monmouth

On this 10th day of March, _______, before me, Luis V. Burgos personally appeared Luis Vincente Burgos, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she has executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Stacey C Goodwin
Notary Public Signature

Stacey C Goodwin
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES SEPT 28, 2021

ID Produced: ___________

My Commission Expires: ___________

Seal:

# EXHIBIT C

# Midland Mortgage

*A Division of MidFirst Bank*

4/10/2018

***CUS**6.27***
Luis V. Burgos
220 Allendale Dr
Morrisville, PA 19067-4808

RE: 53 Frederick Pl
Keansburg, NJ 07734

Dear Customer:

The below-referenced loan with Midland Mortgage paid in full on April 02, 2018. We would like to take this opportunity to thank you for your business. We value each of our customers and hope that you received excellent customer service while working with our representatives.

After posting the payoff transaction, Midland releases the lien on the property by having the necessary release documents prepared and sent to the appropriate authority for recording. Recording the release of mortgage makes it a matter of public record that your loan is paid in full and that Midland no longer holds a lien against the property. The actual recording is performed by the local authority and takes some time to complete before being returned to Midland for retention (normally within 3-4 months of the payoff date). While the release process is being completed, we suggest you retain this letter as evidence that your mortgage has been paid in full. Once received by Midland, copies of the recorded document will be available at our website below. You or your representatives will also be able to obtain copies directly from your local recording authority.

Any excess funds/remaining escrow funds will be sent to you separately within 30 days after the payoff date. If you have not received a check after 45 days and you feel you are entitled to one, please contact us. In addition, a year-end statement of interest and taxes paid this year will be mailed to you next January for filing your income tax return. If your mailing address changes prior to January, you should notify our office or change your address at our website below. We will update our records so that your year-end statement and any refunds will be sent to the correct address.

If you still own the property, Midland would like to remind you that you are now responsible for paying homeowner's insurance and property taxes and for obtaining those bills directly from the insurance company or taxing authority. Any questions about your insurance or taxes should be directed to your insurance agent or tax assessor. Any optional services included with your mortgage payment have been cancelled effective with the last payment we received for those services.

Account information is available for our customers through our automated system at 1-800-654-4566 and at our website located at www.MyMidlandMortgage.com. If we can be of further service, please contact our Customer Service Department at the same number Monday through Friday, 8AM to 5PM (Central Time).

Sincerely,

Customer Service Department
Midland Mortgage
Loan Number [redacted] Case Numbe[redacted] 1157

**Notice:** If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust, or you are currently in bankruptcy under the protection of the automatic stay, this is not an attempt to collect the debt from you personally, and is for informational purposes only. If your loan was in default at the time MidFirst Bank obtained it, and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to inform you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.

**Notice to Connecticut and North Carolina Residents:** The purpose of this communication is to collect a debt.

**Notice to Vermont Residents:** This is an attempt to collect a debt and any information obtained will be used for that purpose.

CORRESPONDENCE
P.O. Box 26648, Oklahoma City, OK 73126-0648
Phone 1-405-426-1299 Fax 1-405-767-5500

www.MyMidlandMortgage.com
Please include your name, loan number, daytime telephone number, and email address on all correspondence.